**UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

**SARA CAHN,**

    **Plaintiff,**

**v().**                                                                                 **No. 18-CV-396-JAP/SCY**

**TERRY M. WORD and
TERRY M. WORD, P.C.,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On April 27, 2018, Plaintiff Sara Cahn (Plaintiff) brought claims against her former legal counsel, Defendants Terry M. Word and Terry M. Word, P.C. (collectively, Defendants), for professional negligence and breach of contract.[1] Both claims are based on allegations of legal malpractice. Defendants filed Defendants' Motion for Summary Judgment (Motion), which is fully briefed, in which they contend that Plaintiff's claims are time-barred.[2] The Court agrees and will grant the Motion.

**I.    BACKGROUND**

On May 19, 2006, Plaintiff underwent a pelvic ultrasound at Lovelace Women's Hospital in Albuquerque, New Mexico, after she sought treatment there for pelvic pain. Compl. ¶¶ 6–7. The ultrasound revealed a potentially cancerous mass on her ovary. *Id.* ¶ 7. However, Plaintiff was not informed of this report. *Id.* On August 8, 2006, Plaintiff went to a follow-up consultation

---

[1] *See* COMPLAINT FOR DAMAGES ARISING FROM PROFESSIONAL NEGLIGENCE AND BREACH OF CONTRACT (Doc. 1).
[2] *See* DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 31); PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 38) (Response); DEFENDANTS', TERRY M. WORD AND TERRY M. WORD, P.C.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 45) (Reply).

with Dr. John D. Berryman, who was employed by Sandia OB/GYN Associates, P.C., and had an office located inside Lovelace Women's Hospital. *Id.* ¶ 8. Dr. Berryman informed Plaintiff that she had ovarian cysts that were "nothing to worry about." *Id.* ¶ 9. He diagnosed Plaintiff with endometriosis and did not schedule a biopsy. *Id.*

On September 22, 2008, Plaintiff sought further treatment in Jackson, Wyoming, for the same pelvic pain. *Id.* ¶ 10. A CT scan revealed an "extensive abnormality in the pelvis with what appears to be a large, multilobulated complex cystic mass." *Id.* Soon after this, Plaintiff was diagnosed with ovarian cancer. *Id.* ¶ 11. She underwent a total hysterectomy, an omentumectomy, removal of both ovaries, removal of fifty-four lymph nodes, and extensive scraping of her diaphragm and colon to remove the cancer. *Id.*

On December 1, 2008, Plaintiff retained Defendants to pursue a medical malpractice suit against Lovelace Health Systems and the doctors who failed to notify Plaintiff of the ovarian mass shown on her May 19, 2006 ultrasound. *Id.* ¶ 12. However, Plaintiff could not recall Dr. Berryman's name or the exact date of her consultation. *Id.* ¶ 13. On April 10, 2009, Defendants filed a complaint for medical malpractice in Bernalillo County District Court on Plaintiff's behalf, naming as defendants Lovelace Health Systems, four doctors, and one physician assistant. *Id.* ¶ 15; Mot. Undisputed Material Facts (UMF) ¶ 1. Defendants also named a "John Doe" physician as a placeholder for Dr. Berryman, explaining that his "identity cannot be ascertained at this time." *Id.* Defendants identified Dr. Berryman on July 1, 2010, through discovery produced by Lovelace. UMF ¶ 4. Plaintiff knew at this time that the statute of

limitations might be an issue.[3] UMF ¶¶ 5–6, Resp. ¶¶ 5–6. On July 9, 2010, Defendants amended the medical malpractice complaint and named Dr. Berryman as an individual defendant. UMF ¶ 7.

On January 13, 2011, Dr. Berryman moved for summary judgment, arguing that Plaintiff's claims against him were barred by the three-year statute of repose contained in the New Mexico Medical Malpractice Act (MMA), NMSA 1978 § 41-5-13. UMF ¶ 10. The district court denied Dr. Berryman's motion. UMF ¶ 10. Although the repose period specified in the MMA had expired on August 8, 2009, the district court applied a due process exception to allow Plaintiff's claim to proceed, "concluding that application of the statutory bar would violate [Plaintiff's] right to due process as guaranteed by the United States and New Mexico Constitutions." *Cahn v. Berryman*, 2018-NMSC-002, ¶ 9, 408 P.3d 1012, 1014 (2017). The district court then denied Dr. Berryman's motion to reconsider this decision, but it certified its order for interlocutory appeal. Plaintiff's Statement of Material Facts (PMF) ¶ 26; Doc. 38-3, Ex. C. In September 2012, Dr. Berryman filed an Application for Interlocutory Appeal contesting the district court's denial of his motion for summary judgment. UMF ¶ 12. The Application, which Plaintiff reviewed, alleged that Plaintiff and Defendants could have identified Dr. Berryman

---

[3] Defendants state in UMF ¶ 5 that "Plaintiff was 'sick' to her stomach and knew that the statute of limitations was going to be an issue." Plaintiff denies that she ever said she was sick to her stomach, and the deposition testimony clarifies that it was Defendants' counsel who used that phrase. However, Plaintiff did testify in deposition that she knew the statute of limitations would be an issue if Dr. Berryman was not identified in time. *See* Doc. 38-1, Cahn Depo. 90:5-91:8. Plaintiff does not appear to dispute this fact in UMF ¶ 5. However, in UMF ¶ 6, Defendants state that "in July 2010, Plaintiff knew that under the law of New Mexico the identity of Dr. Berryman 'technically' came after the statute of limitations." In her response to UMF ¶ 6 Plaintiff denies knowing this and points to her deposition testimony, in which she stated that she "sort of" knew that Dr. Berryman was named after the statute of limitations because she "knew that one law in New Mexico held that technically it was after the statute of limitations, but [she believed that] there was some question about that statute of limitations because that law had recently been changed from an old law that gave you a little bit longer." Doc. 38-1, Cahn Depo. 50:16-51:10.

3

sooner through available discovery procedures but failed to do so.[4] UMF ¶¶ 13–15. The New Mexico Court of Appeals declined to consider the interlocutory appeal. PMF ¶ 27.

Consequently, in June 2013 Dr. Berryman and Plaintiff stipulated to a conditional directed verdict and final judgment. UMF ¶ 17. In the stipulated judgment Dr. Berryman admitted his liability to Plaintiff in the amount of $700,000 for malpractice but reserved his right to appeal the judgment on the ground that Plaintiff's claims against him were time-barred. UMF ¶ 17. When Plaintiff agreed to the conditional stipulated judgment, she understood that Dr. Berryman would appeal the statute of repose issue, and she would not receive any of the judgment amount if the appellate court determined that her claims against Dr. Berryman were time-barred. UMF ¶¶ 18–19. Around the time the stipulated verdict was entered, Plaintiff understood that another attorney had taken over her case from Defendants. UMF ¶ 20.[5] Also at about this time, Plaintiff learned that Defendants had previously sued the clinic that employed Dr. Berryman in an unrelated lawsuit, and she believed Defendants had made a mistake in failing to identify Dr. Berryman sooner. UMF ¶ 21.[6]

---

[4] Plaintiff contends that she did not always thoroughly review documents because she trusted her attorneys. *See* PMF ¶ 25. However, Plaintiff does not dispute that the Application was given to her for review.

[5] Plaintiff disputes UMF ¶ 20 based on her deposition testimony that she believed Defendants had handed off her case to other counsel "right before or right after the appeal." *See* Doc. 38-1, Cahn Depo. 32:14-20. She argues that this testimony does not specify to which appeal it refers and that Defendants remained counsel of record during the Court of Appeals proceedings. *See* PMF ¶ 30. However, the other deposition testimony cited by both Plaintiff and Defendants clarifies that Plaintiff is referring to the time period immediately after entry of the stipulated verdict. *See* Doc. 38-1, Cahn Depo. 80:5-24. Plaintiff does not dispute that she communicated at least primarily with a different attorney regarding the Court of Appeals proceedings. *See id.*

[6] Plaintiff disputes UMF ¶ 21 by arguing that she did not remember when she found out that Defendants had previously sued Dr. Berryman's clinic in an unrelated lawsuit. Plaintiff's deposition testimony states that she believed Defendants made a mistake when she found out that they had previously sued the same clinic. *See* Doc. 38-1, Cahn Depo. 85:2-9. She did at first testify that she does not recall when this was, but she later said that it was around the same time that Defendants stepped away from her case. *See* Doc. 38-1, Cahn Depo. 85:10-23. She had previously stated that Defendants were no longer her primary counsel after the stipulated verdict was entered. *See* Doc. 38-1, Cahn Depo. 80:5-24. Plaintiff asserts that she first realized Defendants had made a mistake after the Court of Appeals reversed the district court. *See* PMF ¶ 28. The deposition testimony Plaintiff cites in support of this does state that Plaintiff believed Defendants made a mistake at that point, but uncited portions go on to say that she first realized the mistake when she learned that Defendants had previously sued the same clinic, which she said was around the time Dr. Berryman appealed the denial of his motion for summary judgment.

Dr. Berryman appealed the judgment based on the statute of repose, and on April 30, 2015, the New Mexico Court of Appeals overturned the district court and held that the due process exception did not apply and Plaintiff's malpractice claims against Dr. Berryman were untimely. Compl. ¶¶ 24–25; *see Cahn v. Berryman*, 2015-NMCA-078, 355 P.3d 58. On November 30, 2017, the New Mexico Supreme Court upheld the decision. Compl. ¶ 26; *see Cahn*, 2018-NMSC-002. Plaintiff filed this suit for legal malpractice on April 27, 2018, asserting that Defendants committed malpractice by failing to timely identify Dr. Berryman. UMF ¶ 22; Compl. ¶ 31. Defendants have moved for summary judgment, arguing that like the underlying medical malpractice claims, Plaintiff's claims for legal malpractice are time-barred.

## II.     DISCUSSION

The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because the parties are of diverse citizenship and the amount in controversy is over $75,000. Since the harm alleged occurred in New Mexico, the substantive law of New Mexico will apply. *See Horizon AG–Prods. v. Precision Sys. Eng'g, Inc.*, No. CIV 09-1109 JB/DJS, 2010 WL 4054131, *4–5 (D.N.M. Sept. 28, 2010).

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court "'view[s] all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party.'" *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015) (quoting *Croy v. Cobe Labs. Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving

party on the evidence presented." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial[.]" *Applied Genetics Int'l, Inc. v. First Affiliated Sec.*, Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

In New Mexico, a legal malpractice claim must be filed within four years from the date of accrual. *Sharts v. Natelson*, 1994-NMSC-114, ¶ 1, 118 N.M. 721, 885 P.2d 642 (citing NMSA 1978, § 37-1-4). Accordingly, Plaintiff's claim is untimely if it accrued before April 27, 2014. A malpractice claim accrues, and the four-year period begins to run, "when (1) the client sustains actual injury and (2) the client discovers, or through reasonable diligence should discover, the facts essential to the cause of action." *Id.* ¶ 11.

Actual injury does not require a specific degree of harm, nor must the damage be ascertainable at the time. *Id.* ¶ 12 "[W]hen malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred." *Id.* (internal citation and quotation marks omitted). Consequently, Plaintiff was injured when Defendants failed to identify Dr. Berryman and name him as a defendant before the expiration of the statute of repose, and Plaintiff therefore lost her legal right to sue Dr. Berryman under the MMA. *See Potter v. Pierce*, 2015-NMSC-002, ¶ 20, 342 P.3d 54 (loss of a legal right to have debts discharged was an actual injury, even though discharge had not yet been denied). Plaintiff does not seem to dispute this definition of her actual injury, but she argues that she did not discover her loss until April 30, 2015, when the Court of Appeals held that her claim against Dr. Berryman was untimely.

A client is deemed to have discovered the facts essential to a malpractice claim when the client knows, or should know, that the attorney's errors have caused harm. *Sharts*, 1994-NMSC-114, ¶ 15. This "is generally a question of fact, but where the undisputed facts show that the client knew, or should have been aware of the negligent conduct on or before a specified date, the issue may be decided as a matter of law." *Id.* (internal brackets and quotation marks omitted). Defendants contend that Plaintiff's claim accrued in July 2010, when she was aware that Defendants had identified Dr. Berryman and named him as a defendant after the expiration of the statute of repose, or at the latest by June 2013, when Plaintiff knew that Dr. Berryman was appealing the limitations issue and thought that Defendants had made a mistake in failing to identify Dr. Berryman earlier. Plaintiff maintains that she "was unaware that Defendants' failure to timely sue Dr. Berryman caused her an injury" until the New Mexico Court of Appeals overturned the district court's decision in her favor, because she did not know that she had suffered any loss as a result of the untimeliness. Resp. at 8.

In *Sharts*, the New Mexico Supreme Court held that a legal malpractice claim was time-barred when the undisputed facts demonstrated that the plaintiff knew his attorney's error had caused him injury more than four years before he sued for malpractice. *Sharts*, 1994-NMSC-114, ¶¶ 9, 17, 19. The plaintiff owned two tracts of land. *Id.* ¶¶ 3–4. In 1978 his attorney negligently drafted restrictive covenants that applied to both parcels, rather than to only one parcel as the plaintiff had intended. *Id.* When the plaintiff began to develop the second tract in the early 1980s, he was notified by owners in the first tract and by a title company that the restrictive covenants applied to both parcels. *Id.* ¶ 4. The plaintiff filed a declaratory judgment action in December 1984 seeking to establish that the covenants did not apply to the second tract. *Id.* ¶ 5. In April 1985, while the action was still pending, he wrote a letter to his attorney threatening to

sue for damages if the court entered judgment in his favor, or for malpractice if it did not. *Id.* ¶ 6. The declaratory judgment was decided against the plaintiff in September 1986, and the decision was affirmed on appeal in June 1988. *Id.* ¶ 8. However, the plaintiff did not file his malpractice suit until July 1989. *Id.* ¶ 9. The New Mexico Supreme Court reasoned that the plaintiff must have known that he had been injured by his attorney's negligence by the time he filed the declaratory judgment action, because he was incurring legal costs in attempting to resist the imposition of the covenants, or, at the latest, by the time he wrote the letter to his attorney complaining of the alleged errors. *Id.* ¶¶ 13, 17. The Court disagreed with the plaintiff's theory that his claim could not accrue until his rights were judicially determined by entry of the adverse declaratory judgment. *Id.* ¶ 14.

Similarly to the plaintiff in *Sharts*, Plaintiff confuses final judicial determination of the extent of her financial loss with her undisputed awareness of the fact that she had been injured by Defendants' failure to timely identify Dr. Berryman. The MMA limits the right to sue for medical malpractice to three years from the date of occurrence. *See* § 41-5-13. Plaintiff lost her right to bring her medical malpractice claim when Defendants failed to file suit against Dr. Berryman within the prescribed time period. The district court allowed Plaintiff's claim to proceed under the due-process exception to the statute of repose. Plaintiff's claim against Dr. Berryman would not have been barred if the New Mexico Court of Appeals had upheld the district court's decision, and Plaintiff would have received the $700,000 stipulated judgment. Plaintiff did not suffer the monetary loss caused by reversal of the district court's judgment in her favor until the Court of Appeals issued its decision reversing the district court. However, *Sharts* rejected the proposition that the client is not injured until the final judicial determination of rights. *See Sharts*, 1994-NMSC-114, ¶ 14.

Plaintiff was injured when the three-year period specified in the MMA statute of repose expired before Dr. Berryman was named as a defendant because she was exposed to the possibility of losing her cause of action. *See Potter*, 2015-NMSC-002, ¶ 20 (when the discharge of debt had previously been a guarantee, exposure to the possibility of denial of discharge was an actual injury). Plaintiff did not know whether she would receive payment of the stipulated judgment from Dr. Berryman until his appeal was decided. Even if the Court of Appeals had not reversed the district court, Plaintiff would still have been injured by Defendants' negligence because she faced the prospect of a statutory bar and she was forced to litigate the timeliness of her claim. Plaintiff was aware of this loss; she knew that Dr. Berryman had been named as a defendant after the expiration of the statutory period, and by January 2011 she knew that he had asserted his right to avoid her claim in his motion for summary judgment. New Mexico does not require that Plaintiff be aware of the extent or permanence of her injury to trigger the start of the limitations period. *See Sharts*, 1994-NMSC-114, ¶ 12.

Plaintiff was given a copy of Dr. Berryman's Application for interlocutory appeal after the district court denied Dr. Berryman's motion. The Application alleged that Defendants had made mistakes that caused the untimeliness, and it outlined several ways Defendants could have identified Dr. Berryman earlier to name him as a defendant in a timely manner. Accordingly, the Court finds as a matter of law that by the time of the September 2012 Application, Plaintiff was aware, or should have been aware, that Defendants had erred in failing to identify Dr. Berryman earlier and that Defendants' actions had caused her actual injury. Further, by June 2013 Plaintiff knew that Dr. Berryman was appealing the timeliness issue, and Plaintiff testified in deposition that around this time she believed Defendants had made a mistake in not identifying Dr.

9

Berryman sooner. The Court therefore concludes that Plaintiff's legal malpractice claim accrued by June 2013 at the latest.

Plaintiff asks the Court to toll the statute of limitations based on the continuous representation doctrine, arguing that Defendants were still representing her through at least the end of 2014. "Under the continuous representation doctrine, running of the statute of limitations is tolled until the representation terminates with respect to the matters that underlie the malpractice action." *Sharts*, 1994-NMSC-114, ¶ 19. "The purpose of the doctrine is to avoid unnecessarily disrupting the attorney-client relationship." *Id.* (internal quotation marks omitted).

It is not clear that application of the continuous representation doctrine would toll the statute of limitations here. Even if Defendants remained counsel of record during the Court of Appeals proceedings, it is undisputed that another attorney was Plaintiff's primary counsel after June 2013. *See Sharts*, 1994-NMSC-114, ¶ 19 ("The inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated." (internal quotation marks omitted)). Especially under these circumstances, the Court is reluctant to adopt the continuous representation doctrine when New Mexico courts have declined to do so. *See Spencer v. Sommer*, 91 F. App'x 48, 52 (10th Cir. 2004) (declining to adopt the continuous representation doctrine due to federalism concerns). Accordingly, the Court will not toll the limitations period. Plaintiff's claims are therefore time-barred.

IT IS ORDERED that DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 31) is GRANTED. Plaintiff's claims will be dismissed with prejudice by separate order.

_____
SENIOR UNITED STATES DISTRICT JUDGE